

**SO ORDERED.**

**SIGNED this 20 day of July, 2018.**

_____
**David M. Warren
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:                                                                    CASE NO. 17-04280-5-DMW

JODY LEE JORDAN
LAURA BOOTH JORDAN
                                                                                   CHAPTER 13
                    DEBTORS

### ORDER DENYING MOTION TO INCUR DEBT

This matter comes on to be heard upon the Debtors' Motion to Permit Trade-In of Vehicle and Purchase of Another Vehicle ("Motion") filed by Jody Lee Jordan ("Mr. Jordan") and Laura Booth Jordan ("Ms. Jordan") (collectively, "Debtors") on May 23, 2018, the Response to Motion to Permit Trade-In of Vehicle and Purchase of Another Vehicle filed by AmeriCredit Financial Services, Inc. dba GM Financial ("AmeriCredit") on June 6, 2018 and the Trustee's Response to Debtors' Motion to Permit Trade-In of Vehicle and Purchase of Another Vehicle filed by John F. Logan, Esq. ("Trustee"), Chapter 13 trustee, on June 13, 2018.  The court conducted a hearing in Raleigh, North Carolina on June 19, 2018.  Travis Sasser, Esq. appeared for the Debtors, Christopher L. White, Esq. appeared for AmeriCredit, and Stephanie E. Goodbar, Esq. appeared

for the Trustee. Based upon the pleadings, the testimony of Ms. Jordan, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on September 1, 2017 ("Petition Date"). The court appointed the Trustee to fulfill the duties as provided in 11 U.S.C. § 1302.

3. Approximately two weeks before the Petition Date, on August 15, 2017, the Debtors executed a promissory note to finance the purchase of a 2017 Chevrolet Camaro ("2017 Camaro") for a purchase price of $26,744.41. Ms. Jordan "traded in" an over-encumbered 2015 Ford Mustang with negative equity of $6,630.09 as part of the transaction. To facilitate the purchase, the Debtors borrowed the total amount of $32,774.00[1] at an interest rate of 9.9% and pledged the 2017 Camaro as collateral. AmeriCredit, the assigned beneficiary under the promissory note, asserts a secured claim against the Debtors in the amount of $32,925.11 as of the Petition Date, with a balance of $30,771.54 due as of the hearing date. The Debtors estimate the 2017 Camaro had a value of $22,000.00 as of the Petition Date. The Debtors are obligated to make monthly payments to AmeriCredit in the amount of $608.01 for the 2017 Camaro, and the Debtors were two monthly payments in arrears as of the hearing date.

4. Mr. Jordan owns a 2006 Chevrolet Colorado ("Colorado") for which he makes monthly payments to OneMain Financial of America, Inc. in the amount of $196.35. The Debtors

---

[1] This amount reflected the purchase price, the negative equity from the Ford Mustang, other sales charges and a $3,000.00 rebate.

2

filed a Motion on May 15, 2018 seeking permission to finance the purchase of a replacement vehicle for Mr. Jordan, because the Colorado is no longer reliable due to various mechanical issues. The court denied that Motion without prejudice, because, among other reasons, the Motion did not provide sufficient information about the proposed financing terms for a replacement vehicle; however, based upon Ms. Jordan's testimony at the hearing on June 19, 2018, the Debtors will need a vehicle to replace the Colorado in the near future.

5.   On their schedules of income and expenses filed with the court on September 8, 2017, the Debtors listed the monthly payment obligations for the 2017 Camaro and the Colorado and reported monthly net available income of $199.02.  After filing the Motion, the Debtors filed amended schedules which reflect an increase in Ms. Jordan's income and a net reduction in the Debtors' expenses.  The Debtors' income includes approximately $1,521.65 in overtime pay earned by Mr. Jordan.  The Debtors assert they currently have monthly net available income of $789.71.

6.   Through their Chapter 13 plan, the Debtors propose to pay the amount of $174.00 per month for sixty months to the Trustee.  The Debtors' Form 122C-2 ("Means Test") states the Debtors must commit the monthly amount of $70.43, or $4,225.80 over the life of the plan, to the payment of unsecured creditors.  Allowed general unsecured claims against the Debtors total $32,205.98.  The Trustee asserts the Debtors have miscalculated their monthly disposable income on the Means Test, and the Debtors should be required to commit a higher monthly amount to unsecured creditors than shown on the Means Test.  The court has not issued a ruling on the Trustee's assertions, but if the Trustee is correct, the Debtors likely would be required to increase their proposed plan payment.[2]  If the current proposed plan payment of $174.00 is deducted from

---

[2] The current proposal of $174.00 per month would result in total payments to the Trustee of $10,440.00. The Debtors propose to pay attorney's fees in the amount of $5,335.00 through the plan, leaving $5,105.00 to cover

3

the Debtors' asserted current monthly net income, the Debtors will have a surplus of $615.71 each month after payment of their actual expenses and the proposed plan payment.

7. The Debtors are seeking court approval[3] to finance the purchase of a 2018 Chevrolet Camaro, Hot Wheels Edition ("2018 Camaro"), manufactured to commemorate the miniature toy car company's fiftieth anniversary. Ms. Jordan desires to purchase the 2018 Camaro because she has sentimental memories of playing with Hot Wheels toy cars with her brothers as a child. Ms. Jordan testified that she and her siblings were "army brats" growing up, and the family relocated often during her childhood. Ms. Jordan was not always able to form friendships with other children, and the Hot Wheels cars served as a common interest between Ms. Jordan and her brothers. Ms. Jordan believes that the 2018 Camaro will increase in value over time because of its unique nature, and she testified she would retain the 2018 Camaro as an "heirloom" if the Motion were allowed. Ms. Jordan provided no support for her opinion that this asset would appreciate over time.

8. As part of the proposed purchase transaction, the Debtors would "trade in" the 2017 Camaro – which has negative equity – toward the purchase price of the 2018 Camaro. The Motion asserts the monthly payment would not exceed $1,050.00. Ms. Jordan testified that she believes the monthly payment would ultimately be between $900.00 and $1,000.00 per month, although it is unclear whether she factored the negative equity of the 2017 Camaro into her calculations. Assuming the monthly payment on the 2018 Camaro were $1,000.00, the Debtors would experience a net increase in vehicle loan payments of approximately $392.00 if the court allowed the Motion. That additional expense would leave approximately $420.00 each month for Mr.

---

the proposed $4,225.80 distribution to unsecured creditors and the requisite Trustee's commission on plan disbursements.

[3] The Debtors filed the Motion pursuant to this district's local rule which requires Chapter 13 debtors to obtain court approval prior to incurring "additional debt of $7,500 or more . . . ." E.D.N.C. LBR 4002-1(g)(5).

Jordan to purchase a replacement for the Colorado, and no funds available for unexpected expenses each month. The court also notes that these calculations do not consider the likely increase in vehicle-related taxes and insurance that would occur if the Debtors purchased the 2018 Camaro and a replacement for the Colorado. These calculations also do not account for the possibility that Mr. Jordan's overtime pay may vary from month-to-month, resulting in a lower monthly net income during certain months.

9. Ms. Jordan testified that despite their apparent surplus in monthly income, the Debtors defaulted on post-petition payments due to AmeriCredit because Ms. Jordan traveled to Texas to attend her mother's funeral in December, 2017, and the Debtors' air conditioning units needed replacement in May, 2018. Ms. Jordan recounted earlier budgetary indiscretions when her spending far exceeded her income after she and her prior husband divorced. Adding to the financial instability, Mr. Jordan lost his job in December, 2016 before obtaining his current employment in February, 2017.

10. AmeriCredit does not oppose the relief requested in the Motion, as long as AmeriCredit would be paid in full upon the transfer of the 2017 Camaro to the seller of the 2018 Camaro as part of the "trade in." The Trustee opposes the Motion on the grounds that the purchase of the 2018 Camaro is not necessary to an effective reorganization and would jeopardize the Debtors' ability to make plan payments.

11. Ms. Jordan testified she realizes the 2018 Camaro "is a wanted item, and not a needed item," and the 2017 Camaro is in good mechanical condition and does not need to be replaced. She also stated that the purchase of a vehicle to replace the Colorado is more important to the Debtors than the purchase of the 2018 Camaro. The Debtors acknowledged that any replacement for the Colorado will reduce the Debtors' monthly net income that would be available

to pay for the 2018 Camaro. The Debtors had no solution to this spontaneous realization of monetary insufficiency. Nevertheless, the Debtors assert the court should allow the Motion, and after they purchase a replacement for the Colorado, the Debtors can determine for themselves whether it is feasible to purchase the 2018 Camaro. The recitals in the Motion and the Debtors' arguments are sufficient evidence that the Debtors are incapable of making those consumer decisions.

12. The court will not allow the Motion for a myriad of reasons. The Debtors have not shown they have monthly income available to pay for a replacement for the Colorado and the 2018 Camaro. The Debtors may be required to increase their monthly plan payment to comply with an adjusted Means Test, and in that case, the Debtors would have even less funds available each month. The Debtors should not be permitted to incur such an unnecessary expense in light of their proposal to pay only a thirteen percent dividend to their unsecured creditors.

13. Ms. Jordan's desire to purchase the 2018 Camaro evidences the Debtors' need to strengthen their financial acumen while they have the opportunity to reorganize their debts. The Debtors refinanced over $6,000.00 in negative equity when they purchased the 2017 Camaro, and they now want to add up to $10,000.00 in negative equity to a loan to purchase the 2018 Camaro, a transaction which surely would carry an exorbitant interest rate. Buying a new vehicle, a depreciating asset, every year is not a path to financial stability. That lesson is one that, hopefully, this court can teach.

14. More instructively, the proposed monthly payment on the 2018 Camaro is nearly as high as the Debtors' $1,143.00 monthly mortgage payment. That monthly payment would constitute between 41% and 48% of Ms. Jordan's monthly take-home pay. It is difficult to imagine anyone being so out of touch with financial reality, but obviously, the Debtors are. They even

made the incredulous argument that Chapter 13 was intended to rehabilitate debtors so that they could immediately resume being active consumers without the need for court oversight, and that a successful economy is dependent on the consumption of goods. That argument is preposterous when the consumer has a history of inability to pay for those goods, as the Debtors here have clearly shown. The Debtors have many months left to complete their Chapter 13 plan, and that obligation must come first.

15. The Debtors propose a thirteen percent dividend to their unsecured creditors while Ms. Jordan dreams of driving a "collector edition" vehicle. Those creditors should not shoulder the burden of Ms. Jordan's emotional rehabilitation through the unnecessary purchase of an adult version of a childhood toy; now therefore,

It is ORDERED, ADJUDGED and DECREED that the Motion be, and hereby is, denied.

END OF DOCUMENT